UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GLORIA D. TYSON,<br><br>           Plaintiff,<br><br>     v.<br><br>KILOLO KIJAKAZI, Acting Commissioner of Social Security,[1]<br><br>           Defendant. | Case No.  1:21-cv-00688-BAM<br><br>**ORDER REGARDING SOCIAL SECURITY COMPLAINT**<br><br>(Docs. 15, 18) |

## **INTRODUCTION**

Plaintiff Gloria D. Tyson ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for disability insurance benefits under Title II of the Social Security Act.  The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to Magistrate Judge Barbara A. McAuliffe.[2]

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi is substituted for Andrew Saul as the defendant in this suit.

[2] The parties consented to have a United States Magistrate Judge conduct all proceedings in this case, including entry of final judgment, pursuant to 28 U.S.C. § 636(c).  (Docs. 9, 10, 11.)

1

Having considered the briefing and record in this matter, the Court finds that the decision of the Administrative Law Judge ("ALJ") is supported by substantial evidence in the record as a whole and based upon proper legal standards. Accordingly, this Court will deny Plaintiff's appeal and affirm the agency's determination to deny benefits.

## FACTS AND PRIOR PROCEEDINGS

Plaintiff filed an application for disability insurance benefits on February 23, 2018. AR 157-58.[3] Plaintiff alleged that she became disabled on July 1, 2017, due to depression, anxiety, sleep disorder – insomnia, arthritis, headaches/migraines, diverticulitis, and diabetes. AR 174-75. Plaintiff's application was denied initially and on reconsideration. AR 90-94, 96-100. Subsequently, Plaintiff requested a hearing before an ALJ. Following a hearing, ALJ Trevor Skarda issued an order denying benefits on December 18, 2019. AR 13-27, 31-56. Thereafter, Plaintiff sought review of the decision, which the Appeals Counsel denied, making the ALJ's decision the Commissioner's final decision. AR 1-6. This appeal followed.

**Hearing Testimony**

ALJ Skarda held a hearing on October 29, 2019, in Stockton, California. Plaintiff appeared with her attorney, David Tillinger. Robert Raschke, an impartial vocational expert, also appeared and testified. AR 33.

In response to questions from her attorney, Plaintiff testified that she stopped working because of anxiety and depression. She had difficulty dealing with the people and the nature of the crimes that were committed that she had to examine. She currently has difficulties dealing with stress. She shuts down completely. AR 37-38. She is not able to leave the house without stress. Her husband will not allow her to leave the house by herself because he is not sure if she will be able to function and get back. There are times in public when she has been unable to function. AR 39-40.

When asked about day-to-day things, Plaintiff testified that she starts something, but then she stops and then does not remember what she was doing. She has to have a reminder from her husband

---

[3] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

to take her medication.  AR 40-41.  She can dress herself, but she cannot put on her own shoes and socks.  She showers every day and does light cleaning around the house.  She dusts with a rag about three times a week.  It will take her one to two hours, but she has to take breaks during the process.  AR 41-42.

Plaintiff testified that she has problems sitting because of her back and she tries to get up about every 10 minutes to move around.  She has problems walking and can only stand or walk about 10 minutes before she needs to sit down for about 10 to 15 minutes.  She spends most of her day alternating between sitting and standing.  She also will lie down during the day for about three or four hours.  AR 42-44.

When asked about her migraines, Plaintiff testified that she has migraines three to four times a week.  They normally last about hour or hour and a half, with a 30-minute to one-hour recovery.  She has to be in the dark with no light.  AR 44.

In response to questions from the ALJ, Plaintiff testified that she does not use a cane.  She does not engage in social or religious activities on a regular basis outside of her house.  She also does not take trips or vacations out of the area.  She last had any kind of diverticulitis about four months prior to the hearing.  She takes medications, which include Flexeril for depression and Meclizine for vertigo, which causes Plaintiff depression.  AR 44-46.

When asked about a typical day, Plaintiff testified that she would be sitting and standing, looking out the window.  A typical day does not include any driving.  She does not do any typing or corresponding.  She is on Facebook.  She also attended a reunion about a year prior to the hearing, which was stressful because she could not remember people that she should have remembered.  She does not belong to any clubs or groups.  AR 45-48.

When asked about her knees, Plaintiff testified that she has a torn meniscus in her left knee and a baker's cyst.  They are not going to do a surgical intervention because her doctor does not think it would help.  Her doctor recommended that she not do any type of knee replacement.  She only takes Ibuprofen for pain.  She also takes medication for her migraines that she supplements with Excedrin Migraine.  AR 48-49.

Following Plaintiff's testimony, the ALJ elicited testimony from the VE. The VE characterized Plaintiff's past work as general manager in a bank and legal aid paralegal. AR 50. The ALJ then asked the VE hypothetical questions. For the first hypothetical, the ALJ asked the VE to assume a person of Plaintiff's age, education, and work experience, who is limited to light work. This individual could stand or walk no more than four hours in an eight-hour day in combination. This individual could frequently bilaterally push or pull or operate foot controls with the lower extremities, could occasionally climb ramps or stairs, but could never climb ladders, ropes, or scaffolds, could frequently balance, and could occasionally stoop, kneel, crouch, and crawl. This individual must avoid concentrated exposure to extreme cold, excessive vibration, and moderate exposure to hazards, defined as exposure of operational control of dangerous moving machinery and unprotected heights. The VE testified that there was nothing in the hypothetical that would prevent the bank job. AR 50-51.

For the second hypothetical, the ALJ asked the VE to consider an individual with an additional limitation of up to four-step tasks. The VE testified that such an individual could not perform the bank job because it is a highly complex job. AR 52.

For the third hypothetical, the VE confirmed that a person limited to simple, routine, repetitive task would not be able to perform Plaintiff's past work. AR 52. If the person in hypothetical one was off task 15 percent or more per hour, there would be no work for that individual. If the individual was absent one and a half days per month, there would be no work. AR 53.

**Medical Record**

The relevant medical record was reviewed by the Court and will be referenced below as necessary to this Court's decision.

**The ALJ's Decision**

Using the Social Security Administration's five-step sequential evaluation process, the ALJ determined that Plaintiff was not disabled under the Social Security Act. AR 16-27. Specifically, the ALJ found that Plaintiff had not engaged in substantial gainful activity since July 1, 2017, the alleged onset date. AR 18. The ALJ identified the following severe impairments: diabetes mellitus, osteoarthritis of the knees, obesity, low back pain, diverticulosis, and migraine headaches. AR 18-21.

The ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled any of the listed impairments. AR 21-22.

Based on a review of the entire record, the ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform light work, except she could stand and walk no more than four hours in an eight-hour day in combination, could frequently push or pull or operate foot controls with the bilateral lower extremities, could occasionally climb ramps and stairs but never climb ladders, ropes, or scaffolds, could frequently balance, could occasionally stoop, kneel, crouch, and crawl, must avoid concentrated exposure to extreme cold and excessive vibration, and must avoid even moderate exposure to hazards, such as operational control of dangerous, moving machinery and unprotected heights. AR 22-26. With this RFC, the ALJ found that Plaintiff could perform her past relevant work as a bank general manager. AR 26. The ALJ therefore concluded that Plaintiff had not been under a disability from July 1, 2017, through the date of the decision. AR 26-27.

## SCOPE OF REVIEW

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, this Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985). In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. *E.g., Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's determination that the claimant is not disabled if the Commissioner applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health and Human Servs.*, 812 F.2d 509, 510 (9th Cir. 1987).

///

**REVIEW**

In order to qualify for benefits, a claimant must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. § 1382c(a)(3)(A).  A claimant must show that he or she has a physical or mental impairment of such severity that he or she is not only unable to do his or her previous work, but cannot, considering his or her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989).  The burden is on the claimant to establish disability.  *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

**DISCUSSION**[4]

Plaintiff asserts three main arguments: (1) the ALJ failed to include credible mental limitations in the RFC or explain why they were omitted from the RFC; (2) the appointment of Andrew Saul as Commissioner of the Social Security Administration, removable only for cause violates separation of powers, rendering the decisions of the ALJ and Appeals Council constitutionally defective because their authority was derived from Mr. Saul; and (3) the ALJ and Appeals Council members were "not properly appointed."  (Doc. 15.)

    **A.**    **RFC – Mild Mental Impairments**

Plaintiff asserts that the ALJ erred by failing to adopt Plaintiff's mild limitations in mental functioning at step four of the sequential evaluation or explain why he was not adopting those limitations. (Doc. 15 at pp. 6-7.)  The Court disagrees.

The ALJ evaluated the severity of Plaintiff's generalized anxiety disorder and adjustment disorder with depressed mood by engaging in the special psychiatric review technique ("PRT").  AR 18-21.  The PRT requires an ALJ to consider the degree of functional limitation resulting from the mental impairment in four broad functional areas: (1) understanding, remembering, or applying

---

[4] The parties are advised that this Court has carefully reviewed and considered all of the briefs, including arguments, points and authorities, declarations, and/or exhibits.  Any omission of a reference to any specific argument or brief is not to be construed that the Court did not consider the argument or brief.

information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself.  20 C.F.R. § 404.1520a(c)(3).  Here, the ALJ found that Plaintiff had "mild limitations" in all four areas.  AR 20-21.  A mild limitation means that a plaintiff's independent, appropriate, and effective functioning in the specified area is "slightly limited." 20 C.F.R. Pt. 404, Subpt. P, Appx. 1 § 12.00(F)(2)(b).  The ALJ based his findings regarding Plaintiff's mental impairments on (1) the opinions of the state agency psychological consultants, (2) an absence of further psychological treatment after August 2018; (3) Plaintiff's testimony and statements; and (4) objective record evidence.  AR 19-21.  At the conclusion of the analysis, the ALJ explained that his RFC assessment "reflects the degree of limitation [he] found" during the PRT analysis.  AR 21.

Plaintiff claims the ALJ erred by failing to account for Plaintiff's mild mental limitations in the RFC.  Courts in this Circuit have found reversible error where the ALJ failed to include mild mental limitations in the assessment of the RFC," while other courts have not found reversible error "where the record demonstrates that the ALJ considered a claimant's non-severe mental impairments before concluding that they did not cause any significant limitation necessitating inclusion in the RFC." *See George A. v. Berryhill*, No. 5:18-CV-00405-AFM, 2019 WL 1875523, at *5 (C.D. Cal. Apr. 24, 2019) (collecting cases); *Thompson v. Saul*, No. 1:18-CV-00137-BAM, 2019 WL 3302471, at *7 (E.D. Cal. July 23, 2019).

This conflict appears to have been addressed by the Ninth Circuit's recent decision in *Woods v. Kijakazi,* 32 F.4th 785 (9th Cir. 2022). *See Hilda V. A. v. Kijakazi, No. 5:22-CV-01064-KES, 2023 WL 1107867, at *4* (C.D. Cal. Jan. 30, 2023) (explaining that *Woods* appeared to resolve the conflict between district courts that have found error when an ALJ finds a mild mental limitation during the PRT and fails to craft a corresponding functional restriction for the RFC and courts finding no error where ALJ considered whether the claimant's mild metal limitations would cause functional limitations and determined they would not).  In *Woods*, the claimant faulted the ALJ for not including mental limitations in her RFC.  *Id.* at 794.  The ALJ considered the claimant's mental health records and assessed her mental functioning using the PRT.  The ALJ found that the claimant had mild limitations in understanding, remembering, or applying information and in concentrating, persisting, or maintaining pace, but the ALJ did not include any mental restrictions in claimant's RFC. *Id.* at 788,

7

793, 795. The ALJ concluded that Woods was not disabled because she could do her past relevant work as a hairstylist and cosmetologist. *Id.* at 788.  On appeal, the Ninth Circuit affirmed the ALJ''s decision, finding no procedural error, even though the ALJ did not include any mild mental limitations in the RFC.  *Id.* at 794; *see also Hilda V. A.*, 2023 WL 1107867, at *4.

As in *Woods*, the Court likewise finds that the ALJ did not err by failing to include any mild mental limitations in the RFC.  *Cf. Pugh v. Kijakazi*, No. 2:20-cv-02255 WBS CKD (SS), 2022 WL 1782517, at *5 (E.D. Cal. June 1, 2022), report and recommendation adopted, No. 2:20-cv-02255 WBS CKD (SS), 2022 WL 3358091 (E.D. Cal. Aug. 15, 2022) (noting scant legal support for plaintiff's assertion that mild mental limitations must be acknowledged in the RFC); *Rania v. Kijakazi*, No. 2:20-cv-01541 MCE CKD (SS), 2021 WL 5771663, at *3 (E.D. Cal. Dec. 6, 2021), report and recommendation approved, No. 2:20-cv-01541 MCE CKD (SS), 2022 WL 95228 (E.D. Cal. Jan. 10, 2022).  There is no suggestion that the ALJ's finding of mild mental limitations is unsupported by substantial evidence in the record and Plaintiff does not challenge this finding.  As in *Woods*, Plaintiff does not identify any evidence that the ALJ failed to consider or explain why the record does not support the ALJ's findings regarding her mental functioning.  *See Woods*, 32 F.4th at 794.

Moreover, in assessing Plaintiff's RFC, the ALJ considered Plaintiff's testimony and reports regarding her alleged symptoms and limitations, including her allegations regarding her mental limitations, such as the ability to remember, concentrate, complete tasks, socialize, handle stress, and handle changes in routine.  AR 22-23.  The ALJ found that Plaintiff's allegations concerning the intensity, persistence and limiting effects of these symptoms were unsupported by objective evidence of record. AR 24.  Further, Plaintiff was able to engage in daily activities and interactions, including living with family, attending to her personal needs without problem, driving a car, shopping in stores once a week without problems, counting change, making appointments, spending time with others over the phone, taking care of her grandchildren once in a while, presenting for her medical appointments, following instructions, using the internet, getting along well with authority figures, traveling for three weeks, singing in a band on weekends and practicing every week.  AR 24.  The ALJ found this evidence inconsistent with Plaintiff's alleged severity of her symptoms and limitations.  AR

24. The ALJ's decision is sufficient to establish the consideration of the PRT analysis when formulating the RFC.

Plaintiff additionally argues that if the mild mental limitations were not included in the RFC, then the ALJ was required to explain why he was omitting such limitations. The ALJ here expressly stated that the RFC assessment "reflects the degree of limitation … found in the 'paragraph B' mental function analysis." AR 21. When an ALJ performs the Paragraph B analysis and indicates the "degree of limitation" is incorporated into the RFC, this is sufficient to carry the burden imposed by the Regulations. *Van Houten v. Berryhill*, No. 1:17-CV-01238 - JLT, 2019 WL 691200, at *14 (E.D. Cal. Feb. 19, 2019) ("The omission of mental limitations from the RFC does not indicate the mental impairments were not considered, but rather reflects the conclusion that the impairments would not interfere with Plaintiff's ability to perform basic work activities."); *Fambrini v. Saul*, No. 4:19-CV-03701-KAW, 2020 WL 7027434, at *2 (N.D. Cal. Nov. 30, 2020) (quoting *Van Houten*, 2019 WL 691200, at *14); *see also Hilda V. A.*, 2023 WL 1107867, at *4 (rejecting procedural argument that if an ALJ decides not to include any functional restrictions in a claimant's RFC due to mild mental limitations assessed during the PRT, then the ALJ must expressly explain why not; ALJ's decision included statement that the RFC reflected the degree of limitation found in the PRT analysis; noting *Woods* found no procedural error where the ALJ made nearly the same statement), citing *Woods*, 32 F.4th at 794.

**B.     Constitutional Argument**

Plaintiff next argues that the appointment of Commissioner Andrew Saul, the Commissioner at the time her case was decided by the ALJ and the Appeals Council, was unconstitutional because he was a single head of the agency, served for longer term than the President, and was removable from the position for cause under 42 U.S.C. § 902(a)(3). (Doc. 15 at 11.) Plaintiff therefore asserts that the delegation of authority to the Appeals Council by Mr. Saul was constitutionally defective. (*Id.* at 11-12.) Plaintiff also asserts that the Appeals Council judges "decided this case under regulations and policies promulgated by Mr. Saul when Mr. Saul had no constitutional authority to issue those rules." (*Id.* at 12.) Plaintiff claims that the Constitution was violated, and this case should be remanded for a

de novo hearing before a new ALJ who has the lawful authority to hear and decide this case.  (*Id.* at 15.)

The Ninth Circuit's opinion in *Kaufmann v. Kijakazi*, 32 F.4th 843 (9th Cir. 2022), decided after the opening brief was filed, is dispositive of this issue. In *Kaufman*, the Ninth Circuit held that the removal provision of § 902(a)(3) "violates separation of powers principles." *Id.* at 848.  However, the court found the removal provision severable from the remainder of the statute. *Id.* at 849.  As a result, a party challenging an agency's past action "must show the unconstitutional removal provision *actually harmed* the party." *Id.* (emphasis in original).  This requires a showing that the removal restriction affected the claimant in a particularized way, "for example, that the President took an interest in her claim or that the Commissioner directed the Appeals Council to decide her case in a particular way because of the statutory limits on the President's removal authority." *Id.* at 850.  A generalized argument "that the unconstitutional removal provision affected the 'expected value' of Claimant's claim because the Commissioner theoretically could act in more ways than he could have without the removal restriction," is insufficient to show actual harm. *Id.*

Here, Plaintiff's argument appears to be that the harm she suffered was denial of a valid administrative adjudicatory process.  (Doc. 15 at 11.)  This is not sufficient to demonstrate particularized harm to Plaintiff.  *See Sexton v. Comm'r of Soc. Sec.*, No. 1:21-CV-00379-EPG, 2022 WL 1471083, at *7 (E.D. Cal. May 10, 2022) (finding argument that the harm claimant suffered was denial of a constitutionally valid adjudication process and decision not evidence of actual harm).  Because Plaintiff offers no evidence of actual harm, Plaintiff's argument fails.

   C.  **Federal Vacancies Reform Act - Appointment of ALJ and Appeals Council Members**

Plaintiff next argues that the ALJ and Appeals Council members were not properly appointed because former Acting Commissioner Nancy Berryhill appointed them after the end of her lawful term under the Federal Vacancies Reform Act ("FVRA"), 5 U.S.C. § 3346(a).  Plaintiff therefore contends that the ALJ and Appeals Council judges had no legal authority to adjudicate Plaintiff's disability application.  (Doc. 15 at 14.)

In particular, Plaintiff contends that Ms. Berryhill began serving as Acting Commissioner on January 20, 2017. However, under the FVRA, her term as Acting Commissioner ended 210 days later on November 16, 2017. Yet, she continued to serve as Acting Commissioner until Andrew Saul became Commissioner on June 17, 2019, in excess of the statutory limit of 210 days. Plaintiff contends that "[d]espite not being Acting Commissioner under the FVRA after November 16, 2017, on July 16, 2018 Ms. Berryhill purported to properly appoint . . . ALJs and Appeals Council judges." (Doc. 15 at 14.) Plaintiff contends that Ms. Berryhill no longer had any legal authority to make such appointments, and no acting or permanent Commissioner since that time has ever claimed to have properly appointed ALJs and Appeals Council judges. (*Id.*)

Plaintiff addresses the legal grounds for relief under the FVRA by citing to a single out-of-district, out-of-circuit case, *Brian T. D. v. Kijakazi*, 2022 WL 179540 (D. Minn. Jan. 20, 2022). (Doc. 15 at 16.) This citation is not persuasive. Courts within the Ninth Circuit have recognized that "the overwhelming weight of authority addressing this issue recognizes that the FVRA contains a spring-back provision that made Acting Commissioner Berryhill's appointment valid at the time she appointed the ALJs and Appeals Council Judges. *See Vidaurri v. Kijakazi*, No. 2:21-cv-01963-CDS-DJA, 2022 WL 11873648, at *7 (D. Nev. Oct. 19, 2022) (collecting cases); *Avalon v. Kijakazi*, No. 2:21-cv-02051-NJK, 2022 WL 1746976, at *8 (D. Nev. May 27, 2022) (same); *see also Thomas S. v. Comm'r of Soc. Sec.*, No. C21-05213-MAT, 2022 WL 268844, at *3 (W.D. Wash. Jan. 28, 2022) (rejecting argument that Berryhill's service as Acting Commissioner was invalid at the time that the ALJ's appointment was ratified because she served longer than 210 from the beginning of the vacancy). The Court therefore finds that Plaintiff is not entitled to relief on this basis.

///
///
///
///
///
///
///

11

**CONCLUSION AND ORDER**

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, this Court DENIES Plaintiff's appeal from the administrative decision of the Commissioner of Social Security. The Clerk of this Court is DIRECTED to enter judgment in favor of Defendant Kilolo Kijakazi, Acting Commissioner of Social Security, and against Plaintiff Gloria D. Tyson.

IT IS SO ORDERED.

Dated: **March 1, 2023**           /s/ *Barbara A. McAuliffe*
                                                                  UNITED STATES MAGISTRATE JUDGE